DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MARISSA HARRIS (NYBN 4763025)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    marissa.harris@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROCCI GARRETT, <br><br> Defendant. | NO. CR 17-00487 BLF <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Date: November 19, 2019 <br> Time: 9:00 a.m. |

    Plaintiff United States of America, by and through its undersigned counsel, hereby submits its position regarding the sentencing of the defendant, Rocci Garrett. The government's position is based on its investigation, the Presentence Report (PSR), the files and records of this case, and any arguments or testimony to be presented at the sentencing hearing. For the reasons detailed below, the government recommends a total sentence of 130 months of imprisonment, three years of supervised release, and a $200 special assessment fee, which is sufficient, but not greater than necessary, to meet the goals of sentencing expressed in 18 U.S.C. § 3553(a).

### I.    FACTUAL AND PROCEDURAL BACKGROUND

    Beginning no later than February 2017 and continuing through at least May 25, 2017, Rocci Garrett, together with at least one other co-conspirator, participated in an illegal narcotics importation and distribution enterprise operated primarily in San Jose, California. The purpose of the enterprise was to

covertly import packages containing controlled substances into the United States from countries abroad in order to distribute the controlled substances.

Garrett, at the request of his co-conspirators, established several mailboxes under false personal and business names at various commercial shipping centers in San Jose, California for the purpose of receiving international shipments containing controlled substances, including MDMA. Specifically, Garrett was paid to establish and monitor mailboxes registered to the false name "Mitchell Casterline" at Access Mail Plus and Postal Connections, both located in San Jose. Garrett was notified in advance about incoming shipments to these mailboxes and monitored the delivery status of the packages, picked up the packages when they came, and delivered the packages to his co-conspirators.

On or about February 28, 2017, U.S. Customs and Border Protection (CBP) at the JFK Airport Mail Branch Office in New York intercepted a package shipped from Dusseldorf, Germany and addressed to R&C Distribution, 3043 Meridian Avenue, #57, San Jose, CA 95124. The package contained 989 orange pills which tested presumptive positive for the presence of MDMA. On or about March 9, 2017, a second package arrived at the Access Mail Plus store addressed to R&C Distribution, 3043 Meridian Ave #57, San Jose, CA 95124, United States of America. This package was also shipped from Germany and was seized and inspected by authorities. The package contained approximately 1000 orange, triangular pills bearing the Tesla logo on one side and the letters "CP" on the other side. The pills tested presumptive positive for the presence of MDMA. On or about May 20, 2017, CPB at the San Francisco Air Mail Center intercepted a third package shipped from France containing two packages of numerous pills concealed among children's toys. The pills tested positive for MDMA, at a gross weight of 2,014 grams. The intercepted package was addressed to "Mitchell Casterline," 14938 Camden Avenue, N139, San Jose, CA 95124. All three of the packages were intended for delivery to mailboxes controlled by Garrett, who later admitted that he was paid $500-$1,000 for each package he delivered to his co-conspirators. The MDMA seized from the packages was not imported for medical, scientific, or other legitimate use or imported pursuant to a regulation prescribed by the Attorney General.

Garrett was arrested on June 6, 2017 for probation violations and gave subsequent interviews to state and federal agents admitting his conduct. He was indicted on September 14, 2017 with violations of 21 U.S.C. §§ 963, 952(a) and 960 and 18 U.S.C. § 2. Garrett pled open to all counts on October 2, 2018.

After his arraignment, Garret was released on pretrial supervision. During his two years on pretrial supervision, Garrett failed approximately six drug tests, admitted to illegally using methamphetamine on four occasions, and failed to report for drug testing four times. On at least two occasions, Garrett attempted to tamper with the drug testing equipment. In January 2018, he was arrested in Santa Cruz in possession of 19 tabs of LSD, indicia of identity fraud, and a realistic replica of a gun. PSR ¶ 56. These charges are still pending. *Id*.

Garrett was placed in two substance abuse treatment programs, Si Se Puede and Pathways, and was later admitted to the Convictions Alternatives Program (CAP) over the government's objection. Garrett participated in CAP for approximately seven months. *Id*. at ¶¶ 86-87. While he initially made progress addressing his drug addiction, he was removed from the program and remanded to custody in July 2019 after repeatedly lying to the CAP team, missing treatment appointments, and continuing to test positive for narcotics. *Id*. Garrett is scheduled to be sentenced by the Honorable Beth L. Freeman on November 19, 2019.

## II.   PRESENTENCE REPORT

The government has reviewed the Presentence Report prepared by United States Probation Officer Raquel Butler. The government's objections were addressed in the final version of the report. The government has no further objections to the report's guidelines calculation or factual recitation. For the reasons discussed below, the government recommends a sentence at the low end of Garrett's guidelines range.

## III.   SENTENCING RECOMMENDATION

The government believes that a sentence of 130 months of imprisonment, three years of supervised release, and a $200 special assessment fee meets the goals of sentencing expressed in 18 U.S.C. § 3553(a). Among the many factors to consider are the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, provide adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. §§ 3553(a)(1)-(2). The government's recommended sentence serves each of these goals.

Garrett has a criminal history spanning over fifteen years. He has nineteen felony convictions—

the vast majority of which relate to fraud and theft offenses where he and others relentlessly targeted victims' businesses, vehicles, credit accounts, and identify information in order to steal money, steal property, and sell drugs.  He sustained his first felony convictions in 2002 and has committed numerous theft, burglary, and controlled substance offenses throughout his criminal career, including 2014 felony convictions for extortion and impersonating a police officer, arising from an incident where Garrett and co-conspirators masqueraded as police with tactical vests and replica handguns in order to illegally search the victim's person and vehicle and steal his laptop computers. PSR ¶ 47.  Since 2002, Garrett has been sentenced to nine jail or prison terms, ranging from two days to eight years.  There seems to be no prison sentence sufficient to deter his criminal behavior.  Indeed, the instant offenses were committed while Garrett was on probation for his nineteenth felony and twenty-seventh criminal conviction. *See id*. at ¶¶ 38-48, 50.

While Garrett had a relatively minor role in the overall drug importation conspiracy, the Court's prior attempts to show him leniency and encourage treatment have all backfired.  He has persistently lied to and manipulated anyone who attempts to help him.  A guidelines sentence will finally impress upon Garrett the seriousness of his conduct and the urgent need to fully and honestly embrace treatment opportunities to get his life back on track.  The government's recommended sentence affords plenty of time for Garrett to attend RDAP and earn credits toward early release under the First Step Act.  The key here is that Garrett will have to work hard for his early release benefits, which he simply has not had to do in the past.

Accordingly, the government believes that Garrett's applicable sentencing guidelines range reasonably reflects the nature of his conduct and repeated recidivism and recommends a sentence at the low-end of that range:  130 months of imprisonment, three years of supervised release, and a $200 special assessment fee. The government also agrees with Officer Butler's recommended supervised release conditions, which impose reasonable restrictions on the defendant's activities to encourage rehabilitation and respect for the law while deterring future criminal conduct and non-compliance with supervised release.

///

///

## IV.  CONCLUSION

For the reasons set forth above, the government believes that a sentence of 130 months of imprisonment, three years of supervised release, and a $200 special assessment fee reflects the seriousness of the defendant's criminal conduct and provides a significant deterrent to any future attempts to violate the law.  The government's recommended sentence is sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing, including deterrence, protection of the public, and rehabilitation.

DATED: November 12, 2019                         Respectfully submitted,

                                                 DAVID L. ANDERSON
                                                 United States Attorney


                                                         /s/
                                                 MARISSA HARRIS
                                                 Assistant United States Attorney